No. 3237

Second Circuit

———

TURNER v. ODEN

———

(April 9, 1931.   Opinion and Decree.)

———

Wilkinson, Lewis, Wilkinson & Burford, of Shreveport, attorneys for plaintiff, appellant.

Barnette & Roberts, of Shreveport, attorneys for defendant, appellee.

McGREGOR, J.   This is a suit for $120 damages on account of the killing of a horse belonging to the plaintiff by an automobile belonging to and driven by the defendant. It is the contention of the plaintiff that the killing of the horse was the result of the negligence of the defendant,

while the defendant contends that it was an unavoidable accident. Plaintiff was driving a one-horse wagon on his way home, traveling south on the Jefferson highway about ten miles south of Shreveport, in the parish of Caddo. As he neared his home a young horse belonging to him was discovered loose on the highway. This loose horse at once began to follow plaintiff, trotting along by the side of the horse drawing the wagon. It was about 7 o'clock p. m., December 13, 1926, so that it was about two hours after sunset. Soon plaintiff observed an automobile coming behind him at a distance of about three hundred yards. He turned his head and looked back and began to try to signal to the oncoming automobile by waving his hat. As the defendant neared the wagon, he observed the young horse in the middle of the road, so he slowed down and shifted his car into second gear. He then observed the young horse drop behind the wagon. He judged by this movement of the horse that it would be safe for him to get back in high gear and pass and run by the horse. On this point the defendant testifies as follows:

"A. I saw the horse at the side of the wagon, Mr. Turner was standing up in his wagon, driving the horse hitched to the wagon as I approached him, he got to waving his hat, and I did not know what it was about at first, but I saw that he was trying to drive the horse back and it slowed down and got behind the wagon and when he did that, I started by, and just as the front wheel was about even with the rear of the wagon, he was going along, his horse was trotting along, he afterwards told me that he was urging him along, so as to get the other horse off of the road as soon as he could, and I had two (2) kids in there bringing them home from school and just as I started by, this horse came out, with his tail in the air and his head up and as he went by, he struck my bumper or front fender, and he fell broad-

side in the road and just as he raised up, my car hit his back.

"Q. Why didn't you stop when you first struck the horse—why didn't you stop when he started in front of the car?

"A. That is a funny question to ask me, have you not driven a car, I am sure you have.

"Q. I want to know why you didn't stop?

"A. I was going by the horse and I thought the horse was tied to the wagon, I naturally thought so, as I saw he had gotten in behind the wagon.

"Q. But you did see that he was not tied?

"A. Yes, sir, but I could not stop then, I had gotten out of second gear and was in high, like a man would do in going by a wagon.

"Q. Well, you knocked the horse down?

"A. He fell down the first time that he struck the car, from the side, when he ran by the car.

"Q. Then he got up and ran in front of the car, after he struck it?

"A. Yes, sir, he fell in front of me and as he got up, my car went under him and he sit down on the radiator and if I had been going fast, he would have come up over the windshield, no doubt.

"Q. You saw Mr. Turner waving his hat?

"A. Yes, sir. .

"Q. He was evidently signalling to some one somewhere?

"A. Yes, sir.

"Q. Then you slowed up; came to a stop, then started up?

"A. Yes, sir, after the horse got behind the wagon.

"Q. You first saw the horse running along by the side of the wagon?

"A. Yes, sir, and I slowed down and the horse got behind the wagon and as I thought, the horse was tied to the wagon.

"Q. How could a horse tied behind a wagon be running along by the side of the wagon?

"A. It could have a rope long enough to do it.

"Q. Didn't you think that this horse very likely was not tied?

"A. No, sir, my natural conclusion was, that the horse was tied. I went as far

around him as I could, on the side of the road."

The plaintiff testifies as follows:

"A. I was going south on the Jefferson highway, as I came there in front of the house, I found the young horse in the road, I did not know that it was there, until I found him there, and my first thought that struck me, was to get the colt into someone's yard, as a car might come along and kill it; in the meantime, I saw a light, coming practically three hundred (300) yards, and the road is practically straight for two hundred (200) yards, or rather—it is straight for about three hundred and six (306) steps, I stepped it, and I urged my horse on, as I could tell the car was coming at a rapid rate of speed and the horse was directly behind the wagon and I saw that the car was traveling very fast, so I commenced to flag down, first flagged down with my hands and they didn't seem to notice it and I took my hat, and he never paid any attention to that and about the time Dr. Oden got sixty (60) feet of the car, got close to the wagon, the horse ran out on the side, when he got even with my horse, he hit the horse, hit it ahead of me and knocked it off and he fell on the bumper and he pushed it up the road, before he stopped.  *  *  *

"Q. You say that Dr. Oden's car was about sixty (60) feet away when the horse came out to the side of the wagon?

"A. Yes, sir, he was practically even with the wagon—he was directly behind the wagon when the car was about sixty (60) feet away and the lights were very bright and he ran around, ahead of my horse and wagon, when the car struck him."

The testimony of plaintiff and defendant is rather conflicting, but the defendant's theory is more plausible than the plaintiff's. Furthermore, his testimony was concerning what he saw in front of him, whereas the plaintiff had to pay attention to driving and whatever he saw was behind him. The defendant was in a better position to testify as to how the accident happened than was the plaintiff. Defendant saw the danger of the situation and did all that appeared to him to be necessary to avert it. He came to a practical standstill and shifted his car into second gear, then, as he saw the young horse drop behind the wagon, he thought it was safe to pass the wagon; consequently he put his car into high gear and endeavored to pass, when, just as the front of his car got about even with the rear of the wagon, the horse suddenly darted to the left and ran forward between the wagon and the automobile, and, before defendant was aware of what was happening, the horse ran in front of him and the accident occurred. Defendant's automobile must have been proceeding at a relatively slow rate of speed, for, if it had been going fast, the horse would not have been able to catch up and run in front of him. The record shows that the defendant did use a great deal of care and caution, apparently as much as any prudent man would be required to use. He had his two little children with him in his car. He certainly would not have negligently risked their lives by not observing the usual rules of caution. He had a right to presume that, after the horse abandoned the middle of the road and had gotten behind the wagon, he would not suddenly run back into the road as the automobile was passing and get in front of him. It was a sudden situation, not to be expected. Defendant could not have foreseen it. He is shown to have exercised caution and prudence. If, under that situation, his judgment as to what the horse would eventually do when he endeavored to pass him, which he had a right to do, was not correct, it was not negligence on his part. The judge of the lower court saw and heard the plaintiff and defendant testify. He was

in a better position to judge as to the correctness of their testimony than we are. He gave judgment in favor of the defendant and rejected the demands of the plaintiff. He evidently did this on the theory that plaintiff did not prove his case by a preponderance of testimony. We find no apparent error in his interpretation of the evidence.

For the reasons assigned, the judgment appealed from is affirmed; the costs of both courts to be paid by the plaintiff.